UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

RYAN BOUCHER, HEATHER BOUCHER,
TOM E. BREMER, MICHELLE R. BREMER,
BRENDA J. CHAMBERS, CHRISTOPHER
DETTLOFF, ADAM DUCH, and MARK
TESSEN, on behalf of themselves and all others
similarly situated,

          Plaintiffs,

v.

FINANCE SYSTEM OF GREEN BAY, INC.,
and JOHN AND JANE DOES NUMBERS 1
THROUGH 25,

          Defendants.

Case No.: 17-CV-132

---

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS'
RENEWED MOTION FOR CLASS CERTIFICATION**

---

**INTRODUCTION**

Plaintiffs' renewed motion for class certification should be denied because they have

failed to establish the superiority element of Fed. R. Civ. P. Rule 23(b) and because they are not

adequate class representatives as required by Rule 23(a)(4).

Class treatment is not superior to individual treatment for three reasons: (1) class

recovery would be *de minimus*, (2) the policies underlying class treatment are not implicated in

this case, and (3) Plaintiffs' narrowed class definition will expose Defendant Finance System of

Green Bay, Inc. ("FSGB") to successive class action lawsuits on the same grounds. In addition,

Plaintiffs and their attorneys are not adequate class representatives as evidenced by their decision

to cut out nearly 90% of the individuals falling within the class as defined by the Amended

Complaint. Their motion should be denied accordingly.

## FACTUAL BACKGROUND

This FDCPA case arises from a letter FSGB mailed to Plaintiffs and others containing the safe harbor language fashioned by the Seventh Circuit Court of Appeals in *Miller v. McCalla, Raymer, Padrick,Cobb, Nichols, & Clark, LLC*, 214 F.3d 872 (7th Cir. 2000). *Miller* advised debt collectors that they should use the following language when collecting a debt that may vary from day-to-day:

> As of the date of this letter, you owe $ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-[phone number].

*Id.* at 876. On appeal in this case, the Seventh Circuit held that the safe harbor language should be tailored to reference only the types of charges that would cause the debtor's debt balance to change. *See Boucher v. Finance System of Green Bay, Inc.*, 880 F.3d 362, 370 (7th Cir. 2018).

FSGB sent letters containing the *Miller* safe harbor language to debtors residing in Wisconsin. It acknowledges that it did not add late or other charges to the debts it sought to collect from Plaintiffs. It also acknowledges that it could not add late charges to the debts owed by the named plaintiffs: the Bouchers, the Bremers, Chambers, Duch, and Tessen.

Plaintiffs now seek to certify a class. The Amended Complaint,[1] which is the operative pleading, defines the putative class as follows:

---

[1] The original Complaint similarly defined the putative class as:

> (a) all persons with addresses in the State of Wisconsin (b) to whom FSGB mailed a collection letter in an attempt to collect a defaulted medical debt; (c) which was not returned as undelivered by the United States Postal Service; (d) and which letter stated, "because of interest, late charges and other charges that may be assessed by your creditor that vary from day to day, the amount due on the day you pay, may be greater" and the amount did not increase in the next collection letter;

2

This claim is brought on behalf of a Class of all persons to whom FSGB mailed a written communication in the form of Exhibits A, B, C, D, E, and F, using an address in the State of Wisconsin, during the period of January 30, 2016 through February 20, 2017, which stated, "because of interest, late charges and other charges that may be assessed by your creditor that vary from day to day, the amount due on the day you pay, may be greater" and late charges and other charges were not subsequently added to the amount of the debt.

(Am. Compl. ¶ 148.)

However, Plaintiffs do not seek to certify that class. Rather, for the first time, they ask the Court to certify a narrower class that arbitrarily includes only those debtors who owe money to five creditors. The new, narrower proposed class definition is:

All persons with Wisconsin addresses to whom FSGB mailed an initial written communication between January 30, 2016 and February 20, 2017, which was not returned as undeliverable by the U.S. Postal Service, and which sought to collect a debt on behalf of the following creditors:

    (i)  Barker Physical Therapy Clinic;

    (ii) Fox Valley Emergency Medicine;

    (iii) Orthopedic Sports Medicine;

    (iv) Hand to Shoulder Center of Wisconsin; or

    (v) The Center for Anesthetics and Plastic Surgery

and the collection letter:

    (i)  stated, "because of interest, late charges, and other charges that may be assessed by your creditor that vary from day to day, the amount due on the day you pay, may be greater"; and

---

(e) and which letter was sent on or after a date one year prior to the filing of this action and on or before a date 21 days thereafter.

(Doc. 1 at ¶ 94.) Plaintiffs sought to certify this class on February 6, 2017. (Doc. 8-9.)

3

302568158v1 0995712

Case 1:17-cv-00132-WCG   Filed 09/21/18   Page 3 of 18   Document 56

(ii) late charges and other charges were not subsequently added to the amount of the debt.

(Doc. 51 at 1-2.)

## ARGUMENT

### I.    CLASS CERTIFICATION STANDARD

A plaintiff seeking class certification bears the burden of showing that the requirements of Rule 23 are satisfied. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Class actions are "the exception to the usual rule" that cases are conducted by and on behalf of only the individual named parties. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982) (internal quotation omitted). Class certification is permissible only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 . . . have been satisfied." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 916 (7th Cir. 2011) (citation omitted). This rigorous analysis is not limited to the four corners of the complaint. Rather, the court "should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675–76 (7th Cir. 2001).

To certify a class, Plaintiffs must satisfy the requirements of Rule 23(a) and (b) of the Federal Rules of Civil Procedure. Under Rule 23(a), a member of a class may sue as a representative of a class only if: (1) the purported class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Failure to meet any of these four requirements precludes class certification. *Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). As will be discussed in detail below, Plaintiffs'

4

decision to cut out nearly 90% of the class they originally sought to represent renders them inadequate class representatives as required by element (4).

The named Plaintiffs must also show that the class action can be maintained under at least one of three types of class actions listed under Rule 23(b). Plaintiffs allege this case is the type described in subsection 23(b)(3), which means they must establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs have not established the latter requirement of section 23(b)—that class treatment is superior to litigating Plaintiffs' individualized claims. To the contrary, it is not.

To begin, class treatment is not superior because the maximum recovery by the putative class members will be *de minimus*. Under the class definition asserted in the Amended Complaint, the putative class members stand to recover about 12 cents apiece at most. To better its stance against a superiority challenge, Plaintiffs' class certification motion proposes a narrower class cutting out almost 90% of the original class. Even then, the putative class members stand to recover only a de minimus amount, a maximum of about $1 each. In addition, the traditional policies underlying class action, such as small recoveries and access to legal representation are not implicated in this fee-shifting case. Finally, allowing Plaintiffs to certify a class of only certain creditors would rob FSGB, a small regional collection firm of the protections of 42 U.S.C. § 1692k by opening the door for other individual and class actions on the same theory advanced by Plaintiffs in this case. For these reasons, class certification should be denied.

## II.    CLASS TREATMENT IS NOT SUPERIOR TO INDIVIDUAL LITIGATION

302568158v1 0995712

Plaintiffs have not met their burden of establishing superiority as required by Fed. R. Civ. P. 23(b)(2). Their argument that class treatment is superior is based solely on the nature of the alleged violation, a false or misleading statement in a "standardized collection letter." (Doc. 51 at 10.) They offer no evidentiary support for their position, and skip over key considerations such as potential class recovery, the policies underlying class actions, and their abandonment of most of the original class. Their failure to offer such support warrants denial of their motion to certify.

### A. Class treatment is not superior because the putative class recovery will be *de minimis.*

Class treatment is not superior because the amount a class can recover is *de minimus*. Unsurprisingly, Plaintiffs offer no evidence about the class and what it could recover. That is because the putative class will receive almost nothing even if maximum statutory damages are awarded. As discussed further below, maximum statutory damages are unlikely given the nature of the alleged violation.

Section 1692k of the FDCPA governs available damages. It provides for class recovery of (1) actual damages up to $1,000 and (2) statutory damages not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector. U.S.C. § 1692k(a)(2) (emphasis added). In cases that do not involve actual damages, courts consider the following factors in reaching a class damages award: "[1] the frequency and persistence of noncompliance by the debt collector, [2] the nature of such noncompliance, [3] the resources of the debt collector, [4] the number of persons adversely affected, and [5] the extent to which the debt collector's noncompliance was intentional. Because of the factors, "[t]here is no guarantee . . . that the maximum statutory damages would be awarded." *Radaj v. ARS Nat'l Servs.*, 2007 U.S. Dist. LEXIS 100741, at *12-13 (E.D. Wis. Sept. 27, 2007).

302568158v1 0995712

Indeed, for technical, unintentional statutory violations like the one alleged here, statutory damages awards are often much lower than the statutory maximum. *Ford v. Consigned Debts & Collections, Inc.*, 2010 U.S. Dist. LEXIS 135385, 2010 WL 5392643, at *7 (D.N.J. Dec. 21, 2010) (awarding $350 in statutory damages). The "maximum statutory damage award is only assessed in cases where there has been repetitive and egregious FDCPA violations, and even in such cases, the statutory awards are often less than $1,000." *Id. See also Cuevas v. Check Resolution Servs.*, 2013 U.S. Dist. LEXIS 71375, at *33 (E.D. Cal. 2013) (awarding named plaintiff $150 in statutory damages in case involving a patently false statement that there was a pending civil claim against her). *Manopla v. Bryant, Hodge & Assocs.*, LLC, 2014 U.S. Dist. LEXIS 24554, at * 22 (D.N.J. Feb. 11, 2014) (awarding $500 to each named plaintiff); *Sweetland v. Stevens & James, Inc.*, 563 F.Supp. 2d 300, 305 (D. Me. 2008) (awarding $250 in additional or statutory damages despite the abusive nature of the calls because the calls were neither frequent nor persistent, and there was no evidence that the violations were intentional); *Bingham v. Collection Bureau, Inc.*, 505 F.Supp. 864, 876 (D. N.D. 1981) (limiting statutory damages to $400 because, although the harassing calls were intentional, they were not frequent and persistent); *O'Connor v. Check Rite, Ltd.*, 973 F.Supp. 1010, 1020 (D. Colo. 1997) (denying statutory damages where contact was not shown to be frequent, persistent or intentional).

The same is true in class actions. *See also Gonzales v. Arrow Fin. Servs.*, LLC, 660 F.3d 1055, 1068 (9th Cir. 2011) (noting the jury awarded only $125,000 for the FDCPA count in case where the available FDCPA statutory limit was $500,000); *Zimmerman v. Portfolio Recovery Assocs.*, LLC, 2013 U.S. Dist. LEXIS 43744, at *25 (S.D.N.Y. Mar. 27, 2013)(awarding $350,000 where the $500,000 statutory limit applied); *Bonett v. Educ. Debt Servs.*, No. 01-6528,

302568158v1 0995712

2003 U.S. Dist. LEXIS 9757, at *21 & n.4 (E.D. Pa. May 9, 2003) (approving a class settlement equal to 53.5% of the maximum statutory damages available).

It is well settled in this Circuit that "net worth," as used in the Act, refers to "book sheet net worth or balance sheet net worth as reported consistently with GAAP." *Sanders v. Jackson*, 209 F.3d 998, 1001 (7th Cir. 2000). Balance sheet net worth is calculated by deducting total liabilities from total assets; in other words, total assets less total liabilities. *Id.*

FSGB's balance sheet for the year ending December 31, 2017 indicates FSGB's total assets and total liabilities were ▉▉▉▉▉ and ▉▉▉▉▉ respectively. Thus, under *Sanders*, FSGB's net worth is ▉▉▉▉ ▉▉▉▉▉ minus $▉▉▉▉).[2] (Odian Aff. Ex. 4.) That means, the most the class could recover is ▉▉▉▉.

Plaintiffs' Amended Complaint sets forth a class definition with approximately 14,242 putative class members. (Doc. 52-1 at ¶ 8.) Under Section 1692k of the FDCPA, the <u>maximum</u> statutory recovery in this case is 1% of FSGB's net worth, or ▉▉▉▉. Therefore, each member of the putative class alleged in the Amended Complaint stood to recover <u>no more</u> than 12 cents.

In order to increase the recovery per class member, Plaintiffs' class certification motion seeks to certify a narrower class, limited to Plaintiffs' respective creditors. The narrower class includes 1,690 individuals. (Doc. 52-1 at ¶ 10.) As such, each putative class member would be entitled to recover a <u>maximum</u> of about $1.00, and it could be much less due to the nature of the violation.

A *de minimis* recovery is a proper basis to deny a motion for class certification. *See, e.g.*, *Fainbrun v. Southwest Credit Systems*, L.P., 2008 WL 750550 (E.D.N.Y. Mar. 18, 2008)

---

[2] This figure is reflected on the balance sheet as "total equity," which is another term for net worth. (Odian Aff. Ex. 4.) The financials were prepared in accordance with GAAP, with exception to the depreciation schedules, which were prepared per IRS requirements. (Odian Aff. Ex. 3.)

302568158v1 0995712

(ordering decertification of a class where distribution would amount to less than 1 cent per class member while the cost of notice would exceed $100,000); *Jones v. CBE Group, Inc.*, 215 F.R.D. 558 (D. Minn. 2002) (holding that *de minimis* recovery did not allow plaintiff to establish that a class action was a superior means of adjudicating the FDCPA claim as required by FRCP 23(b)(3)); *Gradisher v. Check Enforcement Unit, Inc.*, 209 F.R.D. 392, 394 (W.D. Mich. 2002) (stating: "Given the small amount of the award [six cents], which is essentially equivalent to no award, it is more likely that class members would choose to file individual suits if given the opportunity to do so."); *Danezer v. Wayland Ford, Inc.*, 210 F.R.D. 202, 204-05 (W.D. Mich. 2002) (decertifying Truth in Lending Act claim where the defendant was found to have a negative net worth); *Sonmore v. Checkrite Recovery Servs., Inc.*, 206 F.R.D. 257, 260-61 (D. Minn. Aug. 6, 2001) (denying class certification where it was unclear whether the class members would be entitled to recover more than $100 each); *Lyles v. Rosenfeld Attorney Networ*k, 2000 WL 798824, *6 (N.D. Miss. 2000) (denying certification under FRCP 23(b)(3) where the maximum recovery for each of the 26,767 putative class members amounted to $18.68).

Although the court in *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997), opined in dicta that a *de minimis* recovery "should not automatically bar a class action," its opinion was based on the policies underlying class treatment, which, as discussed above, are not implicated here. Moreover, the *Mace* court never reached the merits of the defendant's *de minimis* argument because the issue was moot. *Id.* at 345. The court acknowledged it would be an appropriate issue for remand. *Id.* at 346.

Courts that have rejected the argument that a *de minimus* recovery should bar class certification under *Mace* have done so reasoning that there are obstacles to individuals pursuing a claim on an individual basis, such as awareness of his or her rights and the ability to find an

302568158v1 0995712

attorney to take the case. *See, e.g.*, *Miller v. Midland Credit Mgmt., Inc.*, 2009 WL 528796 (N.D. Ill. Mar. 2, 2009) (stating: "Further, the Seventh Circuit has noted that 'the FDCPA allows for individual recoveries of up to $1000.' But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case.). However, eight individuals are suing FSGB on an individual basis in this lawsuit alone. Another plaintiff is suing on a similar theory in this district in *Cuebo*. Simply put, there is no shortage of attorneys willing to file FDCPA claims on behalf of individuals in Wisconsin. *See Wenig v. Messerli & Kramer P.A.*, 2013 U.S. Dist. LEXIS 39013, at *19 (D. Minn. Mar. 21, 2013) (noting that the fact four other plaintiffs brought similar claims to plaintiffs suggests that other consumers who received the defendant's letters and had an interest in pursuing their FDCPA rights were able to do so.)

Those who may not be aware of their rights gain nothing from a *de minimus* recovery. As one court pointed out in a discussion of *Mace*, class members would not feel vindicated by receipt of a check that would not even cover the cost of a coffee. "More likely, they will be angered at the fact that the attorney's fees at issue are thousands of times the amount of their paltry compensation." *Lewis v. Riddle*, 1998 U.S. Dist. LEXIS 20465, at *25 (W.D. La. Nov. 18, 1998) (refusing to certify a class on the basis of de minimus recovery). *See also Sonmore*, 206 F.R.D. at 265 (describing a class recovery of $25 per member as "shockingly low when compared to the statutory damages of up to $1,000 that each class member may be eligible to receive in an individual suit"). Moreover, individual actions such as this one can do as much to satisfy the public's interest in enforcing the FDCPA and discouraging violations as class actions can. The same is true here. *Lewis*, 1998 U.S. Dist. LEXIS 20465, at *25.

302568158v1 0995712

In sum, Plaintiffs seek to certify a class where the most the 1,690 putative class members could personally recover is ███████ collectively, or about $1 (or less) per class member. This is not proper for a class. The 8 named plaintiffs could receive $8,000 – a sum far exceeding the class recovery. The attorneys' fees Plaintiffs' counsel seeks to recoup will likely exceed six figures, if they have not already, and continue to grow by the day. In addition, estimates provided by First Class, Inc., who regularly administers class actions, provides the class notice will cost about $12,500 to administer.[3] (Odian Aff. Ex. 1.) That is over 7 times the amount that can be recovered by the class. Because the potential recovery by the putative class is *de minimus*, class treatment is not the superior method for adjudicating Plaintiffs' claims.

**B.      Class treatment is not superior because the policies underlying class treatment are not implicated in this case.**

Plaintiffs summarily conclude that class treatment is superior because "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights" and because individuals are either unaware of their rights or unable to find an attorney. (Br. at 10 citing *Mace*, 109 F.3d at 344.) Such conclusory statements do not satisfy Plaintiffs' heavy burden of proof. On this basis alone, their motion should be denied.

Moreover, Plaintiffs' latter concerns are overstated, given that this case alone names eight individual plaintiffs. Moreover, Plaintiffs' counsel filed a similar class action in *Cuebas v. Vital Recovery Services, LLC*, also pending in this Court. E.D. Wis. 18-CV-1280, Doc. 1. The plaintiff in *Cuebas* challenges use of the same *Miller* language Plaintiffs challenge in this case on the basis that he believes his debt is static.

---

[3] The quote includes the costs of sending a class notice, settlement notice, and checks to the 1,690 putative class members.

302568158v1 0995712

Furthermore, the prospect of recovering $1,000 in statutory damages over a $1.00

recovery provides plenty of incentive for a recipient of the disputed letter to pursue an individual

claim, rendering individual litigation superior to class litigation. Although he did not deny class

certification, the Honorable Aaron Goodstein noted in *Berther v. TYS Total Debt Management,*

*Inc*:

> although a plaintiff's maximum potential recovery of $ 1,000 may
> seem insignificant to some, given that an ordinary plaintiff's
> involvement, effort, and risk has proven minimal in this type of
> litigation, the court finds no reason to conclude that a maximum of
> $ 1,000 would be insufficient to motivate an individual plaintiff to
> pursue private litigation. In this regard, individual litigation may be
> superior to class litigation, especially where the maximum class
> recovery is $ 10.

2007 U.S. Dist. LEXIS 44500, *7 (E.D. Wis. June 19, 2007). The prospect of a $1,000 recovery

surely motivated the eight individual Plaintiffs in this case to sign on as named class

representatives over the alternative, less lucrative option of sitting back as passive class

members.

Plaintiffs' stated concern about a plaintiff's ability to entice an attorney to take an

FDCPA case on account of small potential recoveries is also inflated because FDCPA plaintiffs

are entitled to recover their reasonable attorneys' fees. Judge Goodstein also aptly noted in

*Berther* that the Act's fee-shifting provision "has turned FDCPA cases into a profitable vein of

litigation upon which entire firms focus their practice." *Berther*, 2007 U.S. Dist. LEXIS 44500 at

*6. Stern Thomasson LLP and attorney Greene's former firm, Edelman, Combs, Latturner &

Goodwin, LLC, are examples of such firms.[4] FDCPA cases have become more about squeezing

statutory damages and attorneys' fees from debt collectors than about vindicating debtors who

have been harmed. Judge Goodstein described the situation as follows:

---

[4] Attorney Greene switched firms part way through this litigation.

302568158v1 0995712

> For the most part, FDCPA cases appear to be much more about attorneys [*sic*] fees than the prosecution of consumer rights. For example, cases which present minimal violations engendering nominal statutory damages are able to be litigated because of the recovery of attorney fees. Conversely, it is the avoidance of attorneys [*sic*] fees that undoubtedly serves as the primary motivating factor in pushing defendants into settlements. So often, these cases are simply more cost effective to settle, even if the merit of such a case is debatable. This case is an appropriate example. The parties estimate that perhaps ten percent, or roughly 659 of the class members will submit claims. Thus, the defendants shall pay $ 1,000 to the plaintiff, $ 6,590 to the class members, and $ 12,500 in attorneys' fees and costs. The plaintiff's attorneys are likely to receive nearly double that paid to the entire class. Every additional step in the litigation increases that figure for attorneys' fees. Only if the a [*sic*] trial were to result in a finding that no FDCPA violation occurred would the defendant not have to pay the plaintiff's attorneys' fees. However, such a victory would be hollow given that it would require substantial expense in the form of its own attorneys' fees . . . Thus, the plaintiffs in such cases are in a highly advantageous position because prompt class action settlements are much more cost effective than prolonged litigation.

*Id.* at *10-11; *See also Pappenfuss v. Receivable Mgmt. Servs. Corp.*, 2013 U.S. Dist. LEXIS 138369, at *2-3 (E.D. Wis. Sep. 26, 2013) (noting most FDCPA cases come down to attorneys' fees); *French v. Corporate Receivables, Inc.*, 489 F.3d 402 (1st Cir. 2007) (stating: "Waste is not in the public interest. The Congress that passed the Fair Debt Collection Practices Act in 1977 could hardly have wished to reward lawyers for doing non-productive work and wasting their adversaries' time and the time of the courts as well."). *Cohen v. Am. Credit Bureau, Inc.*, 2012 U.S. Dist. LEXIS 33687, at *5 (D.N.J. Mar. 13, 2012) ("The FDCPA was not passed in order to sprout a cottage industry for lawyers who self-interestedly battle over attorney's fees in federal court."); *Lee v. Thomas & Thomas*, 109 F.3d 302, 306-07 (6th Cir. 1997) ("Counsel should not wish to reap financial rewards for prolonging litigation unnecessarily.") Similarly, an Ohio district court lamented:

> The cottage industry that has emerged does not bring suits to remedy the widespread and serious national problem of abuse . . .

13

302568158v1 0995712

> nor to ferret out collection abuse in the form of obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process. Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs.

*Miller v. Javitch, Block & Rathbone*, 534 F. Supp.2d 772, 778 (S.D. Ohio 2008) (internal citations and quotations omitted). *See also Federal Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513-514 (6th Cir. 2007) (overturned on other grounds and recognizing a developing cottage  industry that does not serve the purposes of the Fair Debt Collection Practices Act); *Kraus v. Prof'l Bureau of Collections*, 281 F. Supp. 3d 312, 322 (E.D.N.Y. 2017) (opining that abuse of the FDCPA is "fairly widespread" and describing FDCPA litigation as "a glorified game of 'gotcha,' with a cottage industry of plaintiff's' lawyers filing suits over fantasy harms the statute was never intended to prevent.")  This cottage industry is evidenced by the sheer volume of individuals who have FDCPA cases in federal court per year, peaking in 2011 with 12,223 cases filed. See WebRecon, WebRecon Stats for Dec 2017 & Year in Review, availa*ble at* https://webrecon.com/webrecon-stats-for-dec-2017-year-in-review/ (last visited Sept. 20, 2018). See also Kraus, 281 F.Supp at 322, n.8 ("Over 800 such cases were filed in the [Eastern District of New York] in each of 2015 and 2016. And as of this writing, over 1,000 FDCPA cases have been filed in 2017, with that number likely to exceed 1,100 before the year is out.") In 2017, consumers filed 9,784 lawsuits. *Id.* These statistics do not include claims filed pre-suit.

Supreme Court Justice Kennedy has also chimed in, criticizing the FDCPA as encouraging the use of "class-action suits [to] transform technical legal violations into windfalls for plaintiffs or their attorneys" even absent an actual injury to plaintiff. *Jerman v. Carlisle,*

302568158v1 0995712

*McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 612 (2010) (J. Kennedy, dissenting).

Justice Kennedy noted:

> A collateral effect of these statutes may be to create incentives to file lawsuits even where no actual harm has occurred. This happens when the plaintiff can recover statutory damages for the violation and his or her attorney will receive fees if the suit is successful, no matter how slight the injury. A favorable verdict after trial is not necessarily the goal; often the plaintiff will be just as happy with a settlement, as will his or her attorney (who will receive fees regardless). The defendant, meanwhile, may conclude a quick settlement is preferable to the costs of discovery and a protracted trial. And if the suit attains class-action status, the financial stakes rise in magnitude.

*Id.* at 616.

Class treatment in this case will not vindicate the rights of consumers, who stand to recover a measly $1 as putative class members. Rather, class treatment would line the pockets of Plaintiffs' attorneys, who, when all said in done, could recover more than one hundred times the entire class's recovery. This is exactly the type of abusive and harassing use of the class action vehicle which has been criticized in this district and elsewhere.

**C.     Class treatment is not superior because it could result in successive class actions.**

Class treatment is also inferior because Plaintiffs' new, tailored class will open FSGB up to successive class action lawsuits because it includes only a fraction of the putative class originally identified by Plaintiffs in their Amended Complaint. To be clear, Plaintiffs' claims are based on the language of FSGB's letter, which is the same irrespective of the creditor. Thus, the sole purpose for gerrymandering the proposed class by creditor is to avoid the damages cap and increase the putative class members' potential recovery from about 12 cents to a dollar.

A class should not be certified under such circumstances. See *Guevarra v. Progressive Fin. Servs.*, 2006 U.S. Dist. LEXIS 89193, at *6 (N.D. Cal. Nov. 30, 2006); *Wenig*, 2013 U.S.

15

Dist. LEXIS 39013, at \*18-19. Successive class actions would eviscerate the protections afforded small, regional operations such as FSGB by Section 1692k(3)'s damage cap of 1% of net worth. *See Guevarra v. Progressive Fin. Servs.*, 497 F. Supp. 2d 1090, 1091-1092 (N.D. Cal. 2007) (highlighting the "troubling aspect" of the FDCPA's damages limit, which applies to *each* class action, and thus incentivizes multiplication of proceedings to avoid full application of damages caps); *Wenig*, 2013 U.S. Dist. LEXIS 39013, at \*18-19 (stating: "Plainly, a class action that resolves only a fraction of the possible claims - based on the fortuity of the county of residence and identity of the creditor - is neither a "fair[]" nor "efficient[]" way to "adjudicat[e] the controversy."). *See also Campos v. Western Dental Servs.*, 404 F. Supp. 2d 1164, 1172-73 (N.D. Cal. 2005) (declining to certify a class limited by county). Moreover, limiting the class would flout one of the central policies underlying class action lawsuits, which is to avoid successive lawsuits. *See Guevarra* 2006 U.S. Dist. LEXIS 89193, at \*6 (citing *Crown, Cork, & Seal Co. v. Parker*, 462 U.S. 345 (1983).

This Court addressed the potential of successive class actions in *Smith v. Simm Assocs.* Although it declined to deny certification on that basis, it did so because there was no evidence the plaintiff engaged in arbitrary gerrymandering. Here there is such evidence. Plaintiffs' original Complaint and Amended Complaint asserted a broad class of all Wisconsin residents who received a letter with the *Miller* language and whose debts did not increase due to late or other charges. That has been the proposed class definition for the first 19 months of this lawsuit.

Plaintiffs proposed the narrower class it seeks to certify now for the first time in its present motion. Their change in course followed discussions with FSGB and the Court about class size, FSGB's net worth, and the *de minimus* recovery members of the original proposed class stood to recover.

16

Furthermore, Plaintiffs' counsel has already found eight individuals to serve as class representatives. In fact, the four original plaintiffs filed the Amended Complaint on April 11, 2018, over 14 months after they commenced the lawsuit, for the sole purpose of adding four additional named plaintiffs. Who is to say there are not more, with different creditors? After all, the new class definition leaves out over 11,000 individuals falling within the original class definition. The possibility of additional class actions in light of Plaintiffs' new class definition means class treatment is not superior to individual actions.

## III.  PLAINTIFFS' REPRESENTATIVES CANNOT ADEQUATELY REPRESENT THE CLASS.

Plaintiffs' have not met their burden of proving adequacy. Rule 23(a)(4) requires Plaintiffs' to establish that "representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). To make that showing, they must establish two things: that (1) the named plaintiffs themselves have the resources to pursue the class claims aggressively, with no conflict existing between the named and unnamed class members, and (2) counsel for the class have the expertise necessary to represent the class adequately. *Armstrong v. Chicago Park Dist.*, 117 F.R.D. 623, 633 (N.D. Ill. 1987).

Counsel's choice to gerrymander and abandon 90% of the class they originally sought to represent establishes they are not adequate class representatives. In *Armstrong*, the court declined to certify a class on adequacy grounds in part due to class counsel's attempt to improperly narrow a defined class in a manner that precluded potential class members from recovering. *Id.* The court held that counsel's choice to forgo a position that was favorable to their client, the class, was an avoidable error that reflected poorly as to adequacy. *Id.*

Here, after more than a year and a half of litigation, Plaintiffs have decided to cut out over 12,500 members of the original putative class without explanation. It is not clear if Plaintiffs were involved in this decision, or whether they were even consulted by counsel. In any

17

event, the decision is at odds with their position that there is no conflict. (Doc. 51 at 9.) To the contrary, their decision inherently conflicts with the interests of those who are not willing to pursue their claims individually by denying them a potential recovery.

Finally, Plaintiffs have not offered any evidence have the resources to pursue the class claims aggressively. Rather, they focus only on the second prong concerning conflicts. They summarily conclude they are adequate representatives because their interests do not conflict with the class. But like counsel, they have chosen to abandon almost the entire class of individuals they originally sought to represent. That is a conflict. Therefore, they are not adequate representatives.

## CONCLUSION

Based on the foregoing, FSGB respectfully requests this Court deny Plaintiffs' Renewed Motion for Class Certification.

Dated this 21st day of September, 2018.

/s/ Elizabeth A. Odian

Brett B. Larsen
State Bar No. 1064355
Elizabeth A. Odian
State Bar No. 1084776
David M. Schultz
ARDC 6197596
Attorneys for Defendant
Finance System of Green Bay, Inc.
**HINSHAW & CULBERTSON LLP**
100 E. Wisconsin Avenue, Suite 2600
Milwaukee, WI 53202
Phone No. 414-276-6464
Fax No. 414-276-9220
E-mail Address(es):
blarsen@hinshawlaw.com
eodian@hinshawlaw.com
dschultz@hinshawlaw.com

18