UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RYAN BOUCHER, et al.,
on behalf of themselves and
all others similarly situated,

Plaintiffs,

v.                                                          Case No. 17-C-132

FINANCE SYSTEM OF
GREEN BAY, INC., et al.,

Defendants.

## DECISION AND ORDER

This Fair Debt Collection Practices Act (FDCPA) action is before the court on Plaintiffs'

motion for class certification under Rule 23 of the Federal Rules of Civil Procedure. The case arises

out of a form debt collection letter that Defendant Finance System of Green Bay (FSGB) sent to the

named plaintiffs in an effort to collect debts they had incurred for medical services. The letter

included the following statement:

> As of the date of this letter, you owe $[a stated amount]. Because of interest, late
> charges, and other charges that may vary from day to day, the amount due on the day
> you pay may be greater. Hence, if you pay the amount shown above, an adjustment
> may be necessary after we receive your check. For further information, write to the
> above address or call [phone number].

Plaintiffs allege that the letter was false, deceptive and misleading, and therefore violated the

FDCPA, 15 U.S.C. §§ 1692e, 1692g(a)(1), because FSGB could neither legally, nor contractually

impose "late charges and other charges" on debts for medical services. Reasoning that the letter

substantially met the "safe-harbor" rule created by the court in *Miller v. McCalla, Raymer, Padrick,*

*Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 876 (7th Cir. 2000), this court originally dismissed

the action and denied Plaintiffs' motion for class certification as moot. Dkt. No. 24, 2017 WL

2345678. The Seventh Circuit held that the statement did not comply with *Miller*, however, and

reversed. *Boucher v. Finance System of Green Bay*, 880 F.3d 362 (7th Cir. 2018).

On remand, Plaintiffs filed an amended complaint which added four new plaintiffs who had

received similar letters and renewed their motion for certification of a class consisting of:

> All persons with Wisconsin addresses to whom FSGB mailed an initial written
> communication between January 30, 2016 and February 20, 2017, which was not
> returned as undeliverable by the U.S. Postal Service, and which sought to collect a
> debt on behalf of the following creditors:
>
>> (i) Barker Physical Therapy Clinic;
>> (ii) Fox Valley Emergency Medicine;
>> (iii) Orthopedic Sports Medicine;
>> (iv) Hand to Shoulder Center of Wisconsin; or
>> (v) The Center for Anesthetics and Plastic Surgery
>
> and the collection letter:
>
>> (i) stated, "because of interest, late charges and other charges that may be
>> assessed by your creditor that vary from day to day, the amount due on the
>> day you pay, may be greater"; and
>> (ii) late charges and other charges were not subsequently added to the
>> amount of the debt.

Pls.' Br., Dkt. No. 51 at 1–2 .

FSGB opposes Plaintiffs' motion for class certification on the ground that class treatment

is not superior to individual treatment for three separate reasons: (1) class recovery would be *de

minimus*, (2) the policies underlying class treatment are not implicated in this case, and (3)

Plaintiffs' narrowed class definition will expose FSGB to successive class action lawsuits on the

same grounds. Def.'s Br. in Opp'n., Dkt. No. 55 at 1. FSGB also argues that "Plaintiffs and their

attorneys are not adequate class representatives as evidenced by their decision to cut out nearly 90%

of the individuals falling within the class as defined by the Amended Complaint." *Id.*

## ANALYSIS

### A. Rule 23 Class Certification

The legal standards governing motions for class certification are well established. A

plaintiff requesting class certification must satisfy the four prerequisites of Rule 23(a) as well as one

of the provisions listed in Rule 23(b). *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir.

2006). Rule 23(a) requires that a plaintiff establish that "(1) the class is so numerous that joinder

of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class." Fed. R.

Civ. P. 23(a). It is the plaintiff's burden to prove that class certification is warranted. *Oshana*, 472

F.3d at 513. Rule 23 is not a "mere pleading standard," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

338, 350 (2011), and a plaintiff must prove each disputed requirement by a preponderance of the

evidence. *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012), *reh'g*

*denied* Feb. 28, 2012 (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,

546 F.3d 196, 202 (2d Cir. 2008)).

#### 1.      Rule 23(a) Analysis

FSGB only disputes one of the four preliminary requirements of Rule 23(a)—adequate

representation. The other three Rule 23(a) requirements are clearly met. Rule 23(a)(1) requires that

the class be "so numerous that joinder of all members is impracticable." Here, the class size, 1,690

members, is sufficiently large to meet Rule 23(a)(1)'s numerosity requirement. *See Pruitt v. City*

*of Chicago*, 472 F.3d 925, 926–27 (7th Cir. 2006) (recognizing that classes consisting of as few as forty members could satisfy numerosity).

Rule 23(a)(2)'s commonality requirement is satisfied when a common issue of law or fact is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. In other words, a plaintiff must show that the class members "suffered the same injury." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012) (citation omitted). Common questions often arise "where . . . defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citations omitted).

FSGB sent each class member a standardized form letter containing the same language that the Court of Appeals has now held to be false and misleading. Further, each class member received the letter from FSGB on behalf of a medical provider, which FSGB admitted "cannot impose 'late charges and other charges' under Wisconsin law." *Boucher*, 880 F.3d at 367. Thus, a common question of both law and fact exist among the individual class members, satisfying Rule 23(a)(2)'s commonality requirement.

The typicality requirement of Rule 23(a)(3) "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims or other class members and his or her claims are based on the same legal theory." *Id.* (citation omitted). Here, the same standardized letter FSGB mailed to each class

4

member on behalf of medical providers is the source of each member's claim. Accordingly, the typicality requirement is satisfied.

Finally, Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." This prerequisite is directed at "concerns about the competency of class counsel and conflicts of interest" between the class and its representatives. *Dukes*, 564 U.S. at 349 n.5. In assessing the adequacy of the class' representation, the court must consider whether the named plaintiff "(1) has antagonistic or conflicting claims with other members of the class; (2) has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007). The burden of establishing this standard is "not difficult." *Murray v. New Cingular Wireless Serv., Inc.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005).

FSGB sent letters containing the offending language during the relevant time period to 14,242 individuals. This was the size of the class pled in the original and amended complaints. The number of letters sent to collect debts of the creditors of the named plaintiffs, which is the class Plaintiffs now request the court to certify, is only 1,690. FSGB argues "[c]ounsel's choice to gerrymander and abandon 90% of the class they originally sought to represent establishes they are not adequate class representatives." Def.'s Reply Br., Dkt. No. 55 at 17. Plaintiffs' counsel contends that the decision was not arbitrary, but the result of FSGB's refusal to disclose information regarding other creditors in discovery and based on the grounds for FSGB's liability established by Seventh Circuit's decision in *Boucher*.

The court is persuaded that Plaintiffs counsel's decision to narrow the class is not the result of inadequate representation. To be sure, courts have denied class certification when a plaintiff arbitrarily chooses to limit the class. *See Campos v. W. Dental Servs., Inc.,* 404 F. Supp. 2d 1164, 1172–73 (N.D. Cal. 2005) (declining to certify a class limited to individuals residing in a particular California county because to do so would "lead to piecemeal litigation," a result "inconsistent with the policy behind both the FDCPA and class actions"); *Guevarra v. Progressive Fin. Servs., Inc.*, No. C-05-3466-VRW, 2006 WL 3613742, at \*3 (N.D. Cal. Nov. 30, 2006) (denying certification of a creditor-specific class due to concerns about multiple lawsuits, fairness, efficiency, and collusion among attorneys to "divide up the class between IKEA and non–IKEA creditors"); and *Wenig v. Messerili & Kramer P.A.*, No. 11-CV-3547(PJS/FLN), 2013 WL 1176062, at \*6 (D. Minn. Mar. 21, 2013) (noting that "a class action that resolves only a fraction of the possible claims—based on the fortuity of the county of residence and identity of the creditor—is neither a 'fair[ ]' nor 'efficient [ ]' way to 'adjudicat[e] the controversy.'" (citing Fed.R.Civ.P. 23(b)(3))). Indeed, in *Guevarra*, the court stated that it appeared that "counsel have divided this class action in order to maximize attorneys' fees without significant benefit to their clients," and ordered plaintiff's counsel to show cause "why the court should not refer the matter to the State Bar of California and the Northern District's Standing Committee on Professional Conduct." 2006 WL 3613742, at \*3. But in each of these cases, the courts addressed the issue of class size in its discussion of whether "a class action is superior to other methods for fairly and efficiently adjudicating the controversy," Rule 23(b)(3), and not in relation to the adequacy of representation.

Here, Plaintiffs have narrowed the class from 14,242 individuals to 1,690—all of whom received letters trying to collect a debt from a medical provider that was also trying to collect a debt

from a named plaintiff. The Seventh Circuit has already held that the statement at issue was materially false and misleading as to Boucher because FSGB admitted that "late charges[] and other charges" could not be legally or contractually added to Plaintiffs' debts. *Boucher*, 880 F.3d at 367. Plaintiffs contend that they could not determine from FSGB's disclosures whether other creditors whose debtors FSGB sent letters containing the same language had a contractual right to charge late charges and other charges, and which did not. Pls.' Reply Br., Dkt. No. 70 at 3. It was for this reason that they narrowed the class to only those creditors on whose behalf FSGB sent letters to the named plaintiffs.

FSGB disputes Plaintiffs' stated rationale, claiming that Plaintiffs never sought discovery on the individual creditors whose debts FSGB was collecting. Def.'s Sur-Reply, Dkt. No. 72-1 at 1–2. But even if Plaintiffs never sought discovery on the issue, the fact remains that there is no evidence in the record that all 14,242 of the letter recipients are similarly situated. FSGB essentially concedes the point by speculating that Plaintiffs chose not to include the entire number of letter recipients in the class so as "to avoid arguments that the class was fatally overbroad by including debts not covered by the Act, that individualized inquiries into the character of the underlying debts foreclosed class treatment," as well as "to increase individual class member recover[y] from a penny to a dollar." *Id.* at 3. Consequently, Plaintiffs' decision to limit the class size is justified; they limited the class to those they could establish were liable on the same grounds as liability was found for Boucher, not as the result of deficiency in representation.

*Armstrong v. Chicago Park Dist.*, 117 F.R.D. 623 (N.D. Ill. 1987), is inapposite. In *Armstrong*, class certification was denied because of counsel's limited experience, previous serious failures in counsel's only prior attempt at class representation (depriving the class of its appellate

7

rights), failure to conduct independent research, and poor pleading. *Id*. at 631–34. None of those deficiencies are present in this case. Counsel are experienced in litigating FDCPA class actions. FSGB's claim that Plaintiffs' counsel lack the resources to pursue the class claims aggressively is equally without merit. The court finds that Plaintiffs are adequate class representatives.

### 2.    Rule 23(b) Analysis

Having satisfied the four requirements of Rule 23(a) by a preponderance of the evidence, Plaintiffs must satisfy at lease one of Rule 23(b)'s provisions. Given the current status of the case with liability no longer at issue, Plaintiffs have based their argument for class certification on Rule 23(b)(3), which requires that the court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Rule instructs the court that the "matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action."

Fed. R. Civ. P. 23(b)(3).

"[A] common question predominates over individual claims if 'a failure of proof on the common question would end the case' and the whole class 'will prevail or fail in unison.'" *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 378 (7th Cir. 2015) (quoting *Amgen, Inc. v. Conn. Retirement*

*Plans & Trust Funds*, 568 U.S. 455, 460 (2013)).  The issue here—the use of language that implied

late charges and other charges could be assessed when in fact they could not—predominates over

any individual questions of the class members as each class member received a letter containing the

exact same language that gives rise to FSGB's liability.  Plaintiffs have therefore met their burden

of establishing the predominance element of Rule 23(b)(3).

It is over the superiority requirement that FSGB makes its strongest argument.  Given the

peculiar posture of this case—FSGB's liability has already been established—and in light of

FSGB's net worth, FSGB contends that a class action is not the superior method to resolve the

individual class members' disputes.  In an FDCPA class action each named plaintiff may recover

up to $1,000 and the remaining class members may recover the "lesser of $500,000 or 1 per centum

of the net worth of the debt collector."  15 U.S.C. § 1692k(a)(2)(B).  FSGB asserts that one percent

of its net worth is $1,692.35.  Given this maximum class recovery and a class size of 1,690, each

individual member of the class would stand to recover only $1.00.  If those class members were to

proceed individually, on the other hand, they would stand to recover up to $1,000.  Thus, proceeding

on a classwide basis would significantly detract from an individual class member's recovery.

The Seventh Circuit has said that "a de minimis recovery (in monetary terms) should not

automatically bar a class action."  *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

This is because "[t]he policy at the very core of the class action mechanism is to overcome the

problem that small recoveries do not provide the incentive for any individual to bring a solo action

prosecuting his or her rights."  *Id.*  The court acknowledged that the FDCPA addresses this problem

for individuals by authorizing awards of statutory damages of up to $1,000 and recovery of actual

attorneys' fees.  *Id.*  But the court recognized that "this assumes the plaintiff will be aware of her

rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case," and emphasized that "[t]hese are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives." *Id.* Still, the Seventh Circuit has never said that the fact that each member of a class would likely receive only a *de minimus* amount should never be taken into consideration.

While not finding it an automatic basis for denying class certification, other courts have found it a proper basis for doing so under certain circumstances. In addition to *Campos*, *Guevarra*, and *Wenig*, cited above, *Fainburn v. Southwest Credit Systems, L.P.*, held that where the distribution would amount to only 1¢ per class member and the costs of mailing notices could itself exceed $100,000, the motion to decertify the class would be granted. No. CV-05-4364, 2008 WL 750550, (E.D.N.Y. Mar. 18, 2008); *see also Jones v. CBE Grp., Inc.*, 215 F.R.D. 558, 570 (D. Minn. 2003) ("Having reviewed evidence of defendant's net worth in camera, the court has determined that the potential recovery for unnamed class members is, at most, *de minimis*."); *Sonmore v. CheckRite Recovery Servs., Inc.*, 206 F.R.D. 257, 265–66 (D. Minn. 2001) ("By certifying the class, the court would ensure a *de minimis* monetary recovery for class members, which constitutes a substantial reduction in what class members may otherwise be entitled by pursuing their claims individually. Because plaintiffs pursing an action individually are eligible to recover a maximum of $1,000, while absent class members in this case are eligible for a maximum of merely twenty-five dollars, the Court finds that the interest of class members in individually controlling the prosecution of their claims prevails over any efficiency objectives that may be achieved through management of the litigation as a class action.").

This case significantly differs from *Mace* in that liability has already been established as a matter of law. This means that the difficulty for a class member to pursue a claim individually is significantly reduced. This fact, when combined with the limited recovery available under the FLSA to members of the class, means that there is virtually no incentive for anyone to remain a member of the class. Any reasonable person, if told that the maximum recovery if he or she remained in the class was a dollar, but that he or she could recover up to $1,000 if he or she was not a member and that liability had already been conceded, would opt out. Thus, instead of reducing the number of individual lawsuits FSGB will be required to defend and the courts to hear, granting Rule 23 class certification will more likely increase the number of individual lawsuits.

Plaintiffs contend that with a maximum individual award of $1,000, and the maximum class award of $500,000, FSGB's argument, if accepted, would mean that a "debt collector would only need to identify 500 class members to avoid class liability and frustrate the deterrent effect of class actions under the FDCPA as envisioned by Congress." Pls.' Reply Br., Dkt. No. 70 at 7. But FSGB is not saying that whenever the possibility of a higher recovery is present, class certification should be denied. In this case, there is a certainty, given the cap on the class recovery and the number of class members, that each member will recover more by opting out since the recovery per class member is only a dollar. The additional deterrent value of paying an extra $1,700 on top of the up to $1,000 FSGB must pay on each individual claim, along with attorneys' fees, and the threat of future liability if it does not change the language in its letter, is negligible. In any event, the need for deterrence would seem more limited where, as here, the violation is almost identical to an alleged violation the Seventh Circuit had previously rejected as "downright frivolous." *See Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 575 (7th Cir. 2004) ("The plaintiffs have an alternative claim

that is downright frivolous—that the statement we quoted from the dunning letter is false, and so

violated 15 U.S.C. § 1692e, because two of the creditors did not add interest. The letter didn't say

they would, only that they might."); *see also Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 765–66

(7th Cir. 2018) ("Similarly here, it is not misleading to say that a debtor who settles a debt may

incur a tax liability. The use of the word 'may' signals only that tax consequences are possible in

the case of some debtors, not that tax consequences are possible or likely (much less certain) in this

particular debtor's circumstances.").

It is true that without a class notice, many of those who received an offending letter from

FSGB may never know they have a claim. But this is really a consequence of the fact that they

sustained no actual damages. They would gain nothing of any significance from a *de minimus*

recovery. The only way they would truly benefit is by bringing an individual lawsuit, which flies

in the face of the primary purpose underlying Rule 23. When one adds the additional expense of

mailing notices and the costs of administration (estimated at $12,500), along with the additional

attorneys' fees that would be incurred, it seems clear that class treatment is not a superior method

of adjudicating Plaintiffs' claims unless the purpose is simply to punish FSGB.

In their reply, Plaintiffs contend that FSGB waived all defenses, including its *de minimis*

defense to class certification. Pls.' Reply Br., Dkt. No. 70 at 6. A full reading of the transcript of

the hearing before the court, however, reveals that FSGB waived only its defenses to liability, not

to class certification. Dkt. No. 71-1 at 12:24–14:02. Class certification was the only issue that

remained. FSGB did not waive its *de minimis* defense to class certification.

Plaintiffs also note that they dispute FSGB's assertion that one percent of its net worth is

less than $1,700. Pls.' Reply Br., Dkt. No. 70 at 7 n.2. But any dispute over FSGB's net worth was

waived when Plaintiffs elected to table its motion to compel further discovery on the issue and proceed on class certification without resolving it. Dkt. No. 67 at 18:6–23, 19:18–20:20. *See United States v. Jaimes–Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005) (explaining that defendant forfeits an argument not raised as a result of an accidental or negligent omission but waives an argument that he selects not to assert as a matter of strategy). Having concluded that further discovery on the issue was unnecessary because it was not relevant to the issue of class certification, Plaintiffs have waived any objection to the financial disclosures FSGB provided for purposes of deciding the motion seeking such certification.

**B.     Motion to Seal**

FSGB requests that its balance sheet, filed in conjunction with its response brief to Plaintiffs' motion for class certification, be filed under seal and that it be allowed to file a redacted response brief that excludes references to its financial condition. The court must make a determination of good cause to seal part of the record in a case. *See Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999). In order to show good cause to restrict a document, the party requesting protection must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Baxter Int'l, Inc. v. Abbott Labs*, 297 F.3d 544, 548 (7th Cir. 2002). "Federal Rule of Civil Procedure 26(c)(1)(G) provides that, upon a showing of 'good cause,' the Court may enter an order 'requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.'" *Nordock Inc. v. Sys. Inc.*, No. 11-C-118, 2012 WL 4760784, at *8 (E.D. Wis. Oct. 5, 2012). In this Circuit, district courts have found that "such 'highly sensitive financial information' constitutes a trade secret, and therefore, may be filed under seal." *Id.* Upon review

13

of the document, it appears to only contain sensitive financial information.  As a result, the court is satisfied that good cause exists to seal the document and keep references to the information contained therein restricted except as disclosed in the briefs of the parties and the decision of the court.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification (Dkt. No. 50) is **DENIED**.  FSGB's motion for leave to file a sur-reply (Dkt. No. 72), Plaintiffs' motion to file a response to FSGB's sur-reply (Dkt. No. 74), and FSGB's motion for leave to file papers under seal (Dkt. No. 54) are **GRANTED.**  Dkt. Nos. 55 and 57-4 will remain restricted.  The Clerk is directed to schedule this matter for a status conference to discuss further proceedings.

**SO ORDERED** this  9th  day of April, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court